UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GERALDINE LAGUERRE,  )
    Plaintiff,  )
      )
      )      CIVIL ACTION NO.:1:19-cv-12464
v.  )
      )
ROBERT WILKE, SECRETARY of  )
DEPARTMENT OF  )
VERTERANS AFFAIRS and  )
DEPARTMENT OF VETERANS  )
AFFAIRS,  )
    Defendant.  )
      )

## COMPLAINT

### Parties

1. Plaintiff, Geraldine Laguerre ("Ms. Laguerre" or "Plaintiff"), is an adult resident of Randolph, Massachusetts.

2. Defendant, Robert Wilke ("Mr. Wilke"), is the Secretary of the Department of Veterans Affairs.

3. Defendant, Department of Veterans Affairs ("VA"), has a regional office located in Boston Massachusetts and has a primary business address located in Washington, D.C. and employs Plaintiff in its Health Care facility located in West Roxbury, Massachusetts.

### Exhaustion of Administrative Remedies

4. Ms. Laguerre filed her charge for discrimination and hostile work environment based on race against Mr. Wilke and the VA within the statutorily required amount of time following the actionable conduct.

5. Ms. Laguerre complied with all internal EEO complaint procedures prior to filing this Action in the U.S. District Court.

6. Ms. Laguerre withdrew her charge of discrimination and hostile work environment from the EEOC in order to file a private right of action in the U.S. District Court pursuant to and in compliance with C.F.R. §1614.407(b).

7. The instant action was timely filed with this Court after removing the Complaint from the EEOC.

## Jurisdiction and Venue

8. This Court has proper jurisdiction over Plaintiff's claim because the Defendant is the Department of Veterans Affairs, a U.S. Government agency.

9. This Court has Federal Question subject matter jurisdiction over Plaintiff's claim pursuant to U.S. Code 28 U.S.C. §1331 as there is a federal question that arises under the laws of the United States, specifically Title VII of the Civil Rights Act, 42 U.S.C. sec. 2000(e) et seq, as amended.

10. Exercise of this Court's supplemental jurisdiction over plaintiff's state law claims is warranted as the state claims are so intricately and substantially related to plainiff's federal claims that they form part of the same case or controversy.

11. Venue is proper in the U.S. District Court of Massachusetts as a substantial part of the events or omissions giving rise to the claims occurred in this Judicial District.

## Factual Allegations

12. Plaintiff, Ms. Laguerre, is a Health Technician, at the VA Boston Healthcare System in West Roxbury, Massachusetts and has been an employee in the VA Boston Healthcare System for more than 15 years.

13. Ms. Marsha Hopkins ("Ms. Hopkins") was a Nurse Manager (Nurse 3) at VA Boston Healthcare System, West Roxbury, Massachusetts and has known the Plaintiff since April 11, 2010.

14. Ms. Hopkins was the Plaintiff's supervisor for roughly five years.

15. After Ms. Hopkins assumed the role of Ms. Laguerre's supervisor, Ms. Laguerre was subjected to a continuous stream of harassment, discrimination and bullying.

16. Throughout Plaintiff's employment at the VA, Ms. Hopkins was considered exceptional in the performance of her job duties and consistently sought out by VA doctors to assist with important medical procedures.

17. Despite Plaintiff's excellent reputation in the performance of her essential job functions, Plaintiff was consistently singled out by Ms. Hopkins and subjected to the unfortunate negative consequence of racial stereotypes surrounding black females in addition to the discriminatory and harassing conduct of her co-workers and her supervisor, Ms. Hopkins.

18. Throughout Plaintiff's employment under the supervision of Ms. Hopkins, Ms. Hopkins consistently treated Plaintiff and other African American employees differently than other similarly situated Caucasian employees.

19. In 2012, another VA employee (Caucasian employee) supervised by Ms. Hopkins, choked Ms. Laguerre (who was 9 months pregnant at the time), and the incident was reported to both the police and Ms. Hopkins to which Ms. Hopkins stated that she could do nothing for the Plaintiff.

20. Ms. Hopkins took no formal disciplinary action, or any action whatsoever, against the employee that choked Ms. Laguerre, despite Ms. Laguerre's reporting of the incident and Ms. Laguerre being fully aware of the troubling events.

21. Despite knowing of the physical assault against Plaintiff, Ms. Hopkins assigned the same employee that had choked Plaintiff to work in the OR at the same time as Plaintiff, resulting in severe emotional distress and fear during her workday.

22. In a similar situation, another female Caucasian VA nurse physically hit an African American co-worker and the Caucasian nurse received no formal discipline of any kind for her actions, despite Ms. Hopkins being fully aware of the incident.

23. While there were very few African American employees under Ms. Hopkins supervision to begin with, Mr. Hopkins did quickly attempt to terminate one of the only other African American employees shortly after she was hired, Ms. Nescelle Williams ("Ms. Williams"), under the guise of incompetence.

24. Ms. Williams was purportedly terminated for inadequate job performance, despite being stronger in both her general knowledge and professional capabilities than other similarly situated non African American employees.

25. Ms. Hopkins even went as far as to tell Ms. Williams that it was not her performance, but "the company that she kept that got her fired."[1]

26. Upon information and belief, Ms. Hopkins was referring to other African American nurses such as Plaintiff when referring to the "company that she [Ms. Williams] kept."

27. Upon information and belief, Ms. Williams appealed the basis of her termination by Ms. Hopkins, prevailed, and was rehired to another department within the VA.

28. Additionally, Ms. Hopkins consistently told Plaintiff to look for employment elsewhere and that she was not allowed to speak to other employees about her concerns.

29. On or about November 4, 2014, the book "30 Days to Taming Your Tongue" was taped to Ms. Laguerre's locker as an apparent threat against her and was reported to the VA police.

---

[1] While, Ms. Williams was allowed to submit a resignation to avoid having a termination note added to her personnel file, this has no practical or legal effect on the fact that Ms. Williams was effectively terminated.

30. Despite Plaintiff's report of the thinly veiled threat on her work locker, no action was taken by the VA or Ms. Hopkins to determine who had made the threat against Ms. Laguerre.

31. In further acts of discrimination, in December 2014, Ms. Hopkins specifically wrote up Plaintiff for using her cell phone, despite the fact that Ms. Laguerre was clearly using her phone for work purposes.

32. Plaintiff's use of a cell-phone for work was commonplace amongst all VA employees and other similarly situated non-African Americans were not reprimanded for such conduct.

33. In March of 2014, another non African American VA employee, Mr. McEvoy, was heard yelling, swearing, and using derogatory comments about Plaintiff while they were to be performing an instrument count during a surgical procedure and Mr. McEvoy refused to perform the essential instrument count.

34. Several days after the incident, Ms. Hopkins disciplined Plaintiff and wrote her up for her role in the interaction, but upon information and belief, never disciplined or provided a similar written warning to Mr. McEvoy.

35. Ms. Hopkins took this action, and maintained the written warning, despite Mr. McEvoy admitting to using inappropriate language and yelling at Plaintiff.

36. Upon information and belief, Ms. Hopkins intentionally wrote up Plaintiff for infractions that were not normally considered severe or used as a basis for punishing other employees for the same conduct in an effort to create a pre-text for Plaintiff's eventual termination.

37. In January of 2015, Plaintiff approached a co-worker, Ms. Jessica Aviles, to discuss the vacation schedule.

38. During this conversation, Plaintiff asked Ms. Aviles if she needed the second week of vacation that she had already requested in February as that particular week would fit Plaintiff's schedule more favorable.

39. In response to Plaintiff's inquiry, Ms. Aviles stated that she did not need those particular dates for her vacation time and that Plaintiff could use that week if she wanted.

40. Ms. Aviles then proceeded to personally add Plaintiff's vacation to the vacation dates in question.

41. Plaintiff did not hear anything, positive or negative, from either Ms. Aviles or Ms. Hopkins about the seemingly innocuous request to swap vacation days until March 12, 2015.

42. Despite there being no workplace incident of any kind to report, other than a request to swap vacation days, Ms. Hopkins asked Ms. Aviles to write a short statement about Plaintiff's request to Ms. Aviles.

43. On March 12, 2015, several months after Plaintiff's innocent request, Ms. Hopkins presented Plaintiff with a written admonishment for making the aforementioned request to Ms. Aviles.

44. The written admonishment was curiously not related to an actual rule infraction or actual improper conduct of any kind, but was rather issued as a result of Ms. Aviles believing that Plaintiff would purportedly make her life more difficult if she did not switch her vacation days, despite there being no history of Plaintiff engaging in said conduct with Ms. Aviles or any other employee.

45. In addition to the January conversation between Ms. Aviles and Plaintiff, on January 29, 2015, Ms. Hopkins approached Plaintiff about a "loud conversation over reliefs" that she overheard between Plaintiff and another VA employee.

46. The "loud conversation" that Ms. Hopkins overheard was a nurse who was not happy about Plaintiff's break assignments and was loudly yelling at Plaintiff about her decision making as they entered a locker room.

47. However, upon approaching Plaintiff, Ms. Hopkins immediately accused Plaintiff of screaming at another employee (Caucasian)

48. Ms. Hopkins' singling out and accusation against Plaintiff of being the only angry or loud employee involved in the conversation was consistent with Ms. Hopkins' disparate treatment of Plaintiff and her furtherance of certain racial stereotypes against female African Americans in the workplace as being "angry" or "loud."

49. As Ms. Hopkins continued to accuse Plaintiff of screaming in her attempt to determine what happened, Plaintiff repeatedly said the word "dude" out of exasperation and made the statement "dude, I can't believe this is happening."

50. Plaintiff never used the word "dude" in a derogatory fashion towards Ms. Hopkins or any other co-worker and merely repeated the word out of exasperation, as she was once again being targeted and singled out by Ms. Hopkins.

51. Plaintiff also stated to Ms. Hopkins, that "you bombarded me with accusations…again, being guilty in your eyes for something I did not do."

52. On, or about, March 12, 2015, Ms. Hopkins approached Plaintiff in the view of her co-workers and patients and handed her a package containing a proposed admonishment, without further explanation, citing two incidents as follows:

a. "On, or about, January 29, 2015, Ms. Hopkins was trying to ask the Plaintiff about a loud conversation that had occurred over reliefs and claims the Plaintiff began screaming at her and calling her "dude" numerous times. Ms. Hopkins ended the conversation stating they could talk when the Plaintiff calmed down."

b. "On, or about, January 20, 2015, Jessica Aviles, another Health Technician at VA Boston Healthcare System, West Roxbury, Massachusetts, told a co-worker that Ms. Laguerre had asked to switch vacation weeks with her, that Ms. Aviles had already made plans for that week, but switched anyway because if she did not, Ms. Laguerre would make her life a "living hell.""

53. Ms. Hopkins' proposed admonishments on March 12, 2015 curiously came almost two months after the alleged events took place.

54. Ms. Hopkins' admonishments of Plaintiff was another clear example of Ms. Hopkins placing African American employees such as Plaintiff under a microscope and subjecting them to more extreme punishments for minor offenses than employees of a different race.

55. Ms. Hopkins' proposed admonishment concerning the events in January referred to Plaintiff's behavior in both incidents as "inappropriate work behavior," though it was never made clear, despite Plaintiff's request for clarification, what was "inappropriate" about Plaintiff's request to Ms. Aviles to switch vacation days.

56. When Plaintiff told Ms. Hopkins that she did not accept the admonishments, Ms. Hopkins screamed at Plaintiff, demanding that she sign the proposed admonishments.

57. Following the receipt of the March 12, 2015 written admonishments, Plaintiff was told in April of 2015 that she was being temporarily transferred to the VA facility in Jamaica

Plain pending an investigation into Plaintiff's purported threats against Ms. Aviles on January 20, 2015, despite Ms. Aviles never making such an allegation.

58. Ms. Hopkins and the VA stated that they were following the facility's policies and procedures for separating employees after a complaint has been made and during an investigation. However, Ms. Aviles never made a complaint that Plaintiff had threatened her and no EEO action was ever filed by Ms. Aviles against Plaintiff.

59. In fact, no investigation into Ms. Aviles' alleged complaint was ever actually conducted.

60. To date, it is unclear what policy or procedure the VA and Ms. Hopkins were following when they transferred Plaintiff to the VA's Jamaica Plain facility, effectively denying Plaintiff her ability to continue earning extra wages for carrying the on call pager.

61. Effectively, Plaintiff was punished for a complaint that was never filed for the duration of an investigation that was never initiated or completed.

62. The VA and Ms. Hopkins did not ordinarily take the extraordinary step of submitting written admonishments and transferring employees out of their place of employment for actions as minor as the alleged actions of Plaintiff, when the employee was not African American.

63. Furthermore, it is clear that Plaintiff's transfer to the Jamaica Plain facility was not used for the purpose that was expressed to Plaintiff and was no more than an attempt by Ms. Hopkins to get rid of and further harass Plaintiff.

64. Following her temporary transfer to the VA's Jamaica Plain facility, Ms. Hopkins refused Plaintiff's request to obtain her belongings from the facility and sent Plaintiff messages telling her "not to return" and that "no one wanted her there [in West Roxbury]."

65. Ms. Hopkins's threatening messages and behavior towards Plaintiff both during her time at the West Roxbury facility and after she was transferred to Jamaica Plain caused her to experience severe emotional distress.

66. Ms. Hopkins' discriminatory actions towards Plaintiff as her direct supervisor were willful and intentional.

67. The Plaintiff filed a formal complaint on, or about, July 24, 2015, with the EEO alleging she had been discriminated against because of Ms. Hopkins' creation of a hostile work environment, her discriminatory admonishments of Plaintiff, and her discriminatory and unwarranted reassignment of Plaintiff to the Jamaica Plain facility.

### COUNT I
**Unlawful Discrimination on the Basis of Race under Title VII of the 1964 Civil Rights Act.**

68. Plaintiff re-alleges and reasserts the allegations in all of the preceding paragraphs as if fully set forth herein.

69. Under Title VII of the Civil Rights Act, it is unlawful for an employer to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual because of that individual's race.

70. Ms. Hopkins and the VA discriminated against Plaintiff on the basis of her race by inter alia (i) subjecting Plaintiff to certain punishments and treatment that was different than her other non African American co-workers, (ii) fabricating reasons for admonishing Plaintiff to create a pre text for future discipline (iii) fabricating a rationale for transferring Plaintiff to the Jamaica Plain VA facility for the duration of a non-existent investigation, denying Plaintiff the ability to continue earning extra pay for carrying an on-call pager, (iv) singling out Plaintiff in situations involving non African American employees for being perceived as too loud or angry, furthering certain racial stereotypes

levied against African American females (v) failing to take any action whatsoever against another Caucasian employee who physically assaulted Plaintiff, (vi) and communicating threatening messages to Plaintiff telling her "not to return" and that "non one wanted here there [West Roxbury]" and (vii) creating a hostile work environment, as  described herein.

71. Ms. Hopkins and the VA's proffered reasons for the written admonishments and her forced transfer to the Jamaica Plain VA facility, lasting two and one half years, were mere pretext for their discriminatory motives.

72. Ms. Hopkins true reason for the adverse employment actions taken against Plaintiff was prohibited discrimination under Title VII of the Civil Rights Act of 1964.

73. Ms. Hopkins and the VA's discriminatory treatment of Plaintiff in comparison to similar situated non African American employees is unlawful discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964.

74. Ms. Hopkins treated other non African American employees under her supervision differently than non African American employees.

75. But for Plaintiff being an African American individual, she would not have been the object of the adverse employment actions levied against her, as described herein.

76. The VA is vicariously liable for the discriminatory actions/omissions of its employees, officers, and agents, including Ms. Hopkins.

77. Plaintiff has suffered actual pecuniary, emotional, and physical harm as a result of the actions of Ms. Hopkins and the VA.

78. Plaintiff is entitled to all appropriate relief for the actions of the VA and its agents, including Ms. Hopkins.

### COUNT II
**Unlawful Discrimination on the Basis of Race in Violation of M.G.L. c. 151B §4**

79. Plaintiff re-alleges and reasserts the allegations in all of the preceding paragraphs as if
    fully set forth herein.

80. Under Massachusetts' law, it is unlawful for an employer, or any agent of the employer,
    to discharge or discriminate against an employee in the terms of that employee's
    conditions of employment on the basis of that employee's race.

81. Ms. Hopkins and the VA discriminated against Plaintiff on the basis of her race by inter
    alia (i) subjecting Plaintiff to certain punishments and treatment that was different than
    her other non African American co-workers, (ii) fabricating reasons for admonishing
    Plaintiff to create a pre text for future discipline (iii) fabricating a rationale for
    transferring Plaintiff to the Jamaica Plain VA facility for the duration of a non-existent
    investigation, denying Plaintiff the ability to continue earning extra pay for carrying an
    on-call pager, (iv) singling out Plaintiff in situations involving non African American
    employees for being perceived as too loud or angry, furthering certain racial stereotypes
    levied against African American females (v) failing to take any action whatsoever against
    another Caucasian employee who physically assaulted Plaintiff, (vi) communicating
    threatening messages to Plaintiff telling her "not to return" and that "non one wanted here
    there [West Roxbury]," and (vii) creating a hostile work environment, as  described
    herein.

82. Ms. Hopkins and the VA's proffered reasons for the written admonishments and her
    forced transfer to the Jamaica Plain VA facility, lasting two and one half years, were
    mere pretext for their discriminatory motives.

83. Ms. Hopkins true reason for the adverse employment actions taken against Plaintiff was prohibited discrimination under M.G.L. c. 151B.

84. Ms. Hopkins and the VA's discriminatory treatment of Plaintiff in comparison to similar situated non African American employees is unlawful discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964.

85. Ms. Hopkins treated other non African American employees under her supervision differently than non African American employees.

86. But for Plaintiff being an African American individual, she would not have been the object of the adverse employment actions levied against her, as described herein.

87. The VA is vicariously liable for the discriminatory actions/omissions of its employees, officers, and agents, including Ms. Hopkins.

88. Plaintiff has suffered actual pecuniary, emotional, and physical harm as a result of the actions of Ms. Hopkins and the VA.

89. Plaintiff is entitled to all appropriate relief for the actions of the VA and its agents, including Ms. Hopkins.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Enter judgment on behalf of Plaintiff on all counts;

2. Award Plaintiff damages in an amount to be determined at trial, including, inter alia, damages for back wages, emotional distress, loss of future potential earnings, out-of-pocket expenses, and other monetary loss.

3. Award Plaintiff maximum punitive damages under Title VII for the willful and intentional discriminatory by the VA through its agent, Ms. Hopkins.

4. Award Plaintiff interest, costs, and attorneys' fees pursuant to 42 U.S. Code §12205 and M.G.L. c. 93 §103.

5. Order the Defendants to remove all record of admonishments from Plaintiff's official personnel file.

## JURY DEMAND

Plaintiffs demand a jury on all issues so triable.

Respectfully Submitted,
GERALDINE LAGUERRE,
By her attorneys,

Emily E. Smith Lee (BBO# 634223)
esmithlee@slnlaw.com
Jacob J. Thaler (BBO#698852)
jthaler@slnlaw.com
SLN Law, LLC
46 South Main Street
Sharon, MA 02067
Tel: 781-784-2322
Fax: 781-328-1772

Dated: December 5, 2019