```
                    UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS


GERALDINE LAGUERRE,            )
                               )
              Plaintiff,       )    CIVIL ACTION NO.
                               )    19-12464-DPW
v.                             )
                               )
DENNIS MCDONOUGH, Secretary    )
Of Department of Veterans      )
Affairs,                       )
                               )
              Defendant.¹      )
```

MEMORANDUM AND ORDER
<u>REGARDING MOTION TO DISMISS</u>
December 2, 2021

Geraldine Laguerre commenced this litigation with a complaint contending that she was discriminated against by her employer, the United States Department of Veterans Affairs, under federal and state law.  I will dismiss the complaint's Title VII claim because Ms. Laguerre failed to exhaust her administrative remedies by pursuing to conclusion her earlier asserted collective bargaining agreement grievance.  I will

---

[1] In Title VII litigation brought by federal employees of cabinet departments, the cabinet secretary of the department complained against is the properly named defendant. *Bulluck* v. *Hagel*, 130 F. Supp. 3d 167, 168 (D.D.C. 2015) (citing 42 U.S.C. § 2000e-16(c)).  Consequently, Dennis McDonough, the current Secretary of the United States Department of Veterans Affairs, has automatically been substituted for the former Secretary Robert Wilkie, pursuant to FED. R. CIV. P. 25(d).  I note that the plaintiff misspelled the former secretary's name in the caption of her complaint and that as a consequence until this notice of automatic substitution of Secretary McDonough under Rule 25(d), the docket in this case reflected that misspelling.

dismiss the complaint's state law claim because it is preempted by Title VII.

When Congress in 1972 brought federal employees, such as Ms. Laguerre, within the scope of Title VII of the Civil Rights Act of 1964, it established a particularized administrative and judicial enforcement mechanism.  The Civil Service Reform Act of 1978 then integrated federal collective bargaining grievance procedures into this administrative and judicial enforcement regime.  By terms, the Civil Service Reform Act of 1978, as codified in 5 U.S.C. §§ 7101, *et seq.* provides that an employee alleging that she has been discriminated against on the basis of race or sex through a practice which also falls under the coverage of a negotiated collective bargaining grievance procedure may "raise the matter under a statutory procedure or the negotiated procedure, but not both."  5 U.S.C. § 7121(d).  Failure to exhaust the specified administrative remedies through the chosen procedure will be fatal to later asserted claims regarding the same matter.  This federal administrative and judicial enforcement regime preempts application of state antidiscrimination procedures to federal employees.

## I. BACKGROUND

All factual allegations are taken from the complaint.[2]

---

[2] Dkt. No. 1.

Plaintiff **Geraldine Laguerre** is a health technician with the VA Boston Healthcare System in Boston, Massachusetts.[3] She alleges that she was harassed, discriminated against for being a black woman, and bullied by her supervisor, Marsha Hopkins, for approximately five years.[4] She further alleges Ms. Hopkins also treated other black employees differently than similarly situated white employees.[5]

The incidents of discrimination alleged became focused for Ms. Laguerre when Ms. Hopkins handed her two written "admonishments" that stated Ms. Laguerre had yelled at Ms. Hopkins and that Ms. Laguerre's coworker had switched vacation weeks with Ms. Laguerre because, if she had not, "Ms. Laguerre would make her life 'a living hell.'"[6]

When Ms. Laguerre refused to sign and thereby acknowledge these admonishments, Ms. Hopkins allegedly screamed at her.[7] The VA at the insistence of Ms. Hopkins then temporarily transferred Ms. Laguerre from the West Roxbury facility where she had been working to the VA facility in Jamaica Plain pending an investigation into Ms. Laguerre's purported threats against the woman with whom she had switched vacation days.[8] The allegedly

---

[3] Dkt. No. 1 at ¶12.
[4] *Id.* at ¶¶13-15.
[5] *Id.* at ¶18.
[6] *Id.* at ¶52.
[7] *Id.* at ¶56.
[8] *Id.* at ¶57.

threatened woman never made a complaint against Ms. Laguerre, however, and the VA never in fact conducted an investigation into this alleged incident.[9]  Ms. Laguerre alleges that after she was transferred, Ms. Hopkins told her not to return to West Roxbury and that no one wanted her there.[10]

## II. PROCEDURAL HISTORY

On May 15, 2015, Ms. Laguerre filed a collective bargaining agreement grievance challenging her admonishments and removal to the Jamaica Plain campus.[11]  Ms. Laguerre, a union member, was covered by the 2003 Master Agreement Between the Department of Veterans Affairs and the National Association of Government

---

[9] *Id.* at ¶¶58-60.
[10] *Id.* at ¶64
[11] Dkt. No. 17-2, Declaration of Sandra Petkus at ¶¶3-4.  As indicated, support for this allegation is found in a declaration with Exhibits appended to the VA's Memorandum [Dkt. No. 17] in Support of its Motion to Dismiss.  Two such declarations were submitted as appendices to the VA's Motion to Dismiss.  Dkt. No. 17-1 (Declaration of Edwin C. Muller) and Dkt. No. 17—2 (Declaration of Sandra Petkus).  At the June 1, 2020 hearing in this matter, I denied Ms. Laguerre's motion to strike reference to the declarations of Mr. Muller and Ms. Petkus and all of the exhibits appended to these declarations.  The VA also directed my attention in that Memorandum [Dkt. No. 17 at 3 n.3.] to the publicly available MASTER AGREEMENT BETWEEN THE DEPARTMENT OF VETERANS AFFAIRS AND THE NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES, (Nov. 2003), available at va.gov/LMR/docs/Agreements/NAGE_Contract_Nov2003.pdf in its Memorandum in support of dismissal.  These documents, the authenticity and accuracy of which are not contested, are central to Ms. Laguerre's claim, Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993), and specifically to whether she exhausted her administrative remedies.  Accordingly, I consider them in addressing the motion to dismiss presented here.

Employees and was therefore able to raise her employment discrimination claim through that collective bargaining agreement's grievance procedure.[12]  There are circumscribed paths to judicial enforcement and review following arbitration of a grievance.  *See generally Nat'l Treasury Emps. Union* v. *Fed. Lab. Rels. Auth.*, 392 F.3d 498, 499 (D.C. Cir. 2004) (enforcement); *Int'l Ass'n of Fed. Firefighters, Loc. F-263* v. *Sec'y of the Navy*, No. CV 15-00526 LEK-KSC, 2016 WL 843252, at *6 (D. Haw. Feb. 29, 2016) (enforcement); *Johnson* v. *Peterson*, 996 F.2d 397 (D.C. Cir. 1993) (review). Although she advanced to Step 2 of the grievance process, Ms. Laguerre did not advance her grievance to Step 3.[13]

    Nevertheless, between May 26, 2015 and July 15, 2015, Ms. Laguerre engaged in informal counseling with an Equal Employment

---

[12] The negotiated grievance procedure applicable to Ms. Laguerre is set forth in Article 44, Section 6 of the MASTER AGREEMENT BETWEEN THE DEPARTMENT OF VETERANS AFFAIRS AND THE NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES.  *See supra* note 11 at 126-32.  Under Article 45 of the Master Agreement, *id.* at 129, 132, an unresolved grievance may lead to arbitration.

[13] Dkt. No. 17-2.  Declaration of Sandra Petkus at ¶¶5-8, (Declaration of Sandra Petkus, Exhibit 3 at 9-10).  Step 3 requires the employee to submit her written grievance to "the Director."  The parties have not identified the Director to whom Ms. Laguerre was required to submit her grievance in Step 3, pursuant to the Master Agreement.  *See supra* note 11 at 128. The VA's Notice of Partial Acceptance of Ms. Laguerre's EEO Complaint, however, makes reference to Director of the VA Boston Healthcare System, Vincent Ng.  Dkt. No. 17-1 (Declaration of Edwin C. Muller, Exhibit 3 at 30).  I infer that the Director specified in the Master Agreement's grievance procedure would be Mr. Ng.

Opportunity counselor through the VA's Office of Resolution Management.[14]  This initiated the VA's Title VII procedure, of which Ms. Laguerre then attempted to make use.  The path to judicial review in federal court following the Title VII procedure is different from that for contested collective bargaining agreement arbitration procedures.  *See generally Al-Saffy* v. *Vilsack*, 827 F.3d 85, 87-89 (D.C. Cir. 2016) (outlining the procedures for resolution of statutory discrimination complaints); *see also Nielsen* v. *Hagel*, 666 F.App'x. 225, 228 (4th Cir. 2016) (citing 42 U.S.C. § 2000e-16; 29 C.F.R. §§ 1614.110, 1614.401).

Ms. Laguerre filed a formal Complaint of Employment Discrimination (EEO Complaint) with the VA's Office of Resolution Management on or about July 24, 2015, alleging that she had been discriminated against "because of Ms. Hopkins' creation of a hostile work environment, her discriminatory admonishments of Plaintiff, and her discriminatory and unwarranted reassignment of Plaintiff to the Jamaica Plain facility."[15]

On September 30, 2015, the VA's Office of Resolution Management assigned an EEO investigator to Ms. Laguerre's EEO

---

[14] Dkt. No. 17-1, Declaration of Edwin C. Muller at ¶¶2-4, (Declaration of Edwin C. Muller, Exhibit 1 at 4).
[15] Dkt. No. 1 at ¶67.

Complaint.[16]  The investigation was completed on February 4, 2016.[17]  Following such an internal EEO investigation, Ms. Laguerre had two options as to how her EEO Complaint could be adjudicated: she could obtain a Final Agency Decision from the VA's Office of Employment Discrimination Complaint Adjudication, or she could elect an EEOC hearing held before an Administrative Judge.[18]  On February 23, 2016, Ms. Laguerre purported to elect a hearing before an EEOC Administrative Law Judge.[19]  On September 17, 2019, Ms. Laguerre withdrew her complaint from the EEOC to proceed in federal court.[20]  Ms. Laguerre then filed on December 5, 2019 the operative complaint in this case now before me.

### III. ANALYSIS

When ruling on a motion to dismiss, I "must accept as true the factual allegations of the complaint, construe all reasonable inferences therefrom in favor of the plaintiffs, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory of the case."  *Beddall* v. *State St. Bank & Tr. Co.*, 137 F.3d 12, 16 (1st Cir. 1998).

---

[16] Dkt. No. 17-1 (Declaration of Edwin C. Muller, Exhibit 4 at 29).
[17] Dkt. No. 17-1. Declaration of Edwin C. Muller at ¶8.
[18] Dkt. No. 17-1 (Declaration of Edwin C. Muller, Exhibit 4 at 31).
[19] Dkt. No. 17-1.  Declaration of Edwin C. Muller at ¶9.
[20] *Id.* at ¶10.

7

### A. Ms. Laguerre Failed to Exhaust Her Administrative Remedies (Count I)

Ms. Laguerre asserts in Count I a Title VII claim alleging unlawful discrimination on the basis of race. "Title VII of the Civil Rights Act of 1964 forbids employment discrimination based on race, color, religion, sex, or national origin." *Brown* v. *General Services Administration*, 425 U.S. 820, 825 (1976). It was amended in 1972 by the Equal Employment Opportunity Act, *id.*, in order to "create an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." *Id.* at 829. Under this specific Title VII statutory scheme, "an aggrieved employee [could] file a civil action in a federal district court to review [her] claim of employment discrimination" only after seeking "relief in the agency that has allegedly discriminated against [her]." *Id.* at 832.

The VA contends that because Ms. Laguerre first filed a collective bargaining agreement grievance, she was required to pursue that negotiated remedy procedure as far as it was possible to take it, before appealing an unfavorable decision to the district court. As a general proposition, exhaustion of remedies is required under the federal employee statutory anti-discrimination enforcement regime. *Cf. Rodriguez* v. *United States*, 852 F.3d 67, 78 (1st Cir. 2017) ("It is settled that a

8

federal court will not entertain employment discrimination claims brought under Title VII unless administrative remedies have first been exhausted."). While the exhaustion of administrative remedies "is not a jurisdictional prerequisite to filing a Title VII claim in federal court," the characterization as such means that a failure to exhaust administrative remedies may be subject to equitable defenses, even with respect to collective bargaining grievance procedures. *Romero-Perez* v. *U.S. Dep't of Justice*, 780 F. Supp. 2d 162, 168 (D.P.R. 2011). Thus, a plaintiff "must adequately show why exhaustion should be waived," *id.* at 169, by demonstrating that "full exhaustion would have caused undue prejudice, irreparable harm, or unusual hardship" to the plaintiff or that the agency proceeding was futile. *Id.* at 170 ("all reasonable possibilities of adequate administrative relief [must] have been effectively foreclosed."). Ms. Laguerre has not attempted to make such a demonstration; consequently, she was required to exhaust her administrative remedies before proceeding to district court.

The federal employee statutory anti-discrimination enforcement regime has been established under an overreaching statutory direction providing that

> [a]n employee shall be deemed to have exercised [her] option under this subsection to raise the matter under either a statutory procedure or the negotiated procedure at such time as the employee timely initiates an action under the applicable statutory procedure or timely files

9

>       a grievance in writing, in accordance with the
>       provisions of the parties' negotiated procedure,
>       whichever event occurs first.

5 U.S.C. § 7121(d).

The employee's decision to proceed by negotiated grievance procedure as opposed to statutory Title VII procedure "is irrevocable." *Vinieratos* v. *United States Dep't of Air Force*, 939 F.2d 762, 768 (9th Cir. 1991). Because Ms. Laguerre filed a timely written grievance, she could not thereafter file an EEO Complaint seeking a Title VII route to relief on the same matter and was required instead to "exhaust [her] administrative remedies in dealing with [her] grievance." *Rosell* v. *Wood*, 357 F. Supp. 2d 123, 128-29 (D.D.C. 2004).

Ms. Laguerre argues that her EEO Complaint did not concern the same matter as her grievance, and that accordingly, she was permitted to file an EEO Complaint even though she had previously filed a grievance. The scope of the term "matter" may be subject to further refined definitions; however, courts have "tended" to construe the word to denote more than a legal claim "and instead to encompass the 'underlying action' or the 'topics raised.'" *Guerra* v. *Cuomo*, 176 F.3d 547, 550 (D.C. Cir. 1999) (per curiam) (first quoting *Bonner* v. *Merit Systems Protection Board*, 781 F.2d 202, 204.05 (Fed. Cir. 1986); then quoting *Facha* v. *Cisneros*, 914 F. Supp. 1142, 1149 (E.D. Pa. 1996), *aff'd*, 106 F.3d 384 (3d Cir. 1996)). Under this

10

approach, where both the grievance and the EEO proceeding involved an employee's termination, they both involved the same "matter" for the purposes of § 7121.  *Heimrich* v. *Dep't of the Army*, 947 F.3d 574, 578 (9th Cir. 2020); *Giove* v. *U.S. Dep't of Transp.*, 178 F. App'x 814, 818 (10th Cir. 2006).

The district court in *Facha* v. *Cisneros* crafted a straightforward test: "If [the plaintiff] raised a topic in both documents, or if the arbitrators assigned to handle the grievance would necessarily have needed to inquire into a topic in discharging their duties, then § 7121(d) bars her from raising that same topic in her subsequent EEO complaint." *Facha*, 914 F. Supp. at 1149.

*Facha's* "topical" test has been widely accepted.  *See Heimrich*, 947 F.3d at 578 (citing cases from "a number of courts" that have "relied on the approach set forth in *Bonner* and *Facha*"); *Redmon* v. *Mineta*, 243 F. App'x 920, 925 (6th Cir. 2007) (finding "union grievance and EEO Complaint involved the same matters within the meaning of section 7121(d)" when they arose from the same employer conduct (internal quotations omitted)); *Penalver* v. *Soc. Sec. Admin.*, 2020 WL 32465, at **2-5 (E.D.N.Y. Jan. 2, 2020) (applying *Facha* test).  I find the *Facha* "topical" test to be both a reasonable and a practical way to identify the scope of the "matter" in issue in this case.

11

Ms. Laguerre's grievance form[21] stated the following:

> Nature of Complaint: Inappropriate Work Behavior, I have been accused by a Co-worker Ms. Jessica who reported that I said to her: I will make her life a living hell. I disputed that I made a statement as such. The Nurse Manager did not treat me equal because she took only one side of story. Base on that unsubstantiated gossip, My Manager who was constantly harassed me and humiliate me, wrote me up with a Proposed Admonishment. While the disciplinary action on the Proposed level, I gave my side story. My Nurse Manager just turned the proposed admonishment to an Admonishment which was based on gossip. Also Ms. Marsha B Hopkins, my Nurse Manger miss-interpreted my word, I did not try to disrespect her but my expression was Dude was taken out of context. I always being nice to everybody. I am not type of person who disrespects people.
>
> Resolution Desired: Ms. Geraldine Laguerre is requesting that unfair Admonishment to be removed from her file. Ms. Geraldine has suffered a lot from this unequal treatment; her Nurse Manager has detailed her to another Campus which is not convenient to her and to her family. Ms. Laguerre requests to be back at West Roxbury Campus. Ms. Laguerre would like to treat equal and want that all harassment to stop. She needs to be treated with respect and dignity. This Grievance bases on The Articles the following articles: Article six (6) section one (1 b) and section seven (7) and all others Articles related to this matter.

Ms. Laguerre's later EEO Complaint stated the following: "Discrimination based on race/color; causing hostile/unsafe work environment; causing to be reassign duty location; disciplinary action → admonishment; loss of pay due to no call."[22]  There are some additional handwritten words in parentheses in the

---

[21] Dkt. No. 17-2 (Declaration of Sandra Petkus, Exhibit 1 at 4).
[22] Dkt. No. 17-1 (Declaration of Edwin C. Muller, Exhibit 3 at 26).

complaint that are difficult to discern, but appear to say "humiliation," "health issues," and "pager." In any event, whether I have correctly read these three words is immaterial because the crux of the complaint is clear. The EEO Complaint further says that the topic of the relief Ms. Laguerre sought was "[t]o be made whole for loss of past and future income due to improper disciplinary admonishment." *Id.* Specifically, Ms. Laguerre's EEO Complaint alleges that she was subjected to a hostile work environment based on national origin, color, and race, as evidenced by an admonishment and reassignment to the Jamaica Plain campus.[23]

Both Ms. Laguerre's grievance and her EEO Complaint are based on the same topic: the admonishment she received from Ms. Hopkins and her detail to a different campus. While her EEO Complaint specifically alleges racial discrimination and her grievance complaint does not, that difference is not sufficient to distinguish the two complaints as separate matters; both complaints are based on the same underlying incidents, and those assigned to evaluate either complaint would need to investigate the admonishment and the detailing to Jamaica Plain in order to resolve the issue. *Facha*, 914 F. Supp. at 1149.

---

[23] Dkt. No. 17-1 (Declaration of Edwin C. Muller, Exhibit 4 at 28).

13

I conclude, therefore, that Ms. Laguerre could not properly file an EEO Complaint after filing her grievance. By filing her grievance, she waived her EEOC procedural avenue and needed to exhaust her remedies with respect to her grievance before the matter could be presented for judicial review in federal court.

Ms. Laguerre argues in her Reply Memorandum[24] regarding her motion to dismiss that her grievance remedy was somehow void because she did not contact an EEO counselor prior to filing her grievance, as she says was required to do under 29 C.F.R. § 1614.105. There is no reason to conclude that this regulation applies to grievances. "By invoking the negotiated procedure, the employee commits to resolving [her] grievance in accordance with the procedures prescribed in the collective bargaining agreement," not those outlined in 29 C.F.R. § 1614.105. *Fernandez* v. *Chertoff*, 471 F.3d 45, 52 (2d Cir. 2006). It would be both counterintuitive and the height of irony to conclude that someone filing a grievance under the negotiated grievance procedure, which does not involve EEO procedures, would thereafter need to be counseled by an EEO counselor. The regulation plainly applies to EEO Complaints, not negotiated grievances. *See generally Johnson*, 996 F.2d at 398-99 (contrasting the "statutory path," requiring consultation with

---

[24] Dkt. No. 18 at 7.

14

an EEO counselor and the negotiated procedure which has its own distinct procedural requirements).

Ms. Laguerre, having begun the negotiated collective bargaining remedy, could not properly attempt to return to a path not initially taken as the avenue to this court. She was obligated to exhaust the negotiated remedy to conclusion on her journey to judicial review. She did not do so. Consequently, she is barred from judicial review in federal court.

### B. Title VII Preempts Ms. Laguerre's State Law Claims (Count II)

Based on the same alleged facts Ms. Laguerre unsuccessfully asserts to invoke the particularized administrative and judicial enforcement mechanism for federal employees, she also seeks to pursue in Count II a claim for discrimination under Massachusetts law. However, the federal anti-discrimination enforcement mechanism under Title VII of the Civil Rights Act of 1964, as refined by the procedural mechanisms of Title VII of the Civil Service Reform Act of 1978, "provides the exclusive judicial remedy for claims of discrimination in federal employment." *Cf. Brown*, 425 U.S. at 835 (explaining that "[t]he balance, completeness, and structural integrity of § 717 [of Title VII of the Civil Service Reform Act] are inconsistent with the petitioner's contention that the judicial remedy afforded by § 717(c) was designed merely to supplement other putative

15

judicial relief"). Put another way, "where the gravamen of the claim is Title VII [of the Civil Rights Act of 1964] discrimination, the only remedy available is under Title VII [of the Civil Rights Act of 1964]." *Rivera-Rosario* v. *U.S. Dep't of Agric.*, 151 F.3d 34, 38 (1st Cir. 1998) (per curiam); *see also Gonzalez* v. *Otero*, 172 F. Supp. 3d 477, 505 (D.P.R. 2016), *aff'd sub nom. Gonzalez* v. *Velez*, 864 F.3d 45 (1st Cir. 2017) (Title VII "is an exclusive and pre-emptive avenue for cases involving federal employment discrimination."). Accordingly, because Ms. Laguerre's claim under MASS. GEN. LAWS ch. 151B § 4 is based on the same underlying facts as her Title VII claim, "Title VII is her sole remedy." *Burns* v. *Johnson*, 18 F. Supp. 3d 67, 76 (D. Mass. 2014) (citing *Bush* v. *Lucas*, 462 U.S. 367, 385-86 (1983), *Berrios* v. *Dep't of Army*, 884 F.2d 28, 30-31 (1st Cir. 1989)).

## IV. CONCLUSION

For the reasons set forth more fully above, I GRANT Defendants' Motion [Dkt. No. 16] to Dismiss.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE